# IN THE COURT OF APPEALS OF IOWA

No. 15-0931
Filed August 5, 2015

IN THE INTEREST OF R.F. and K.M.,
Minor Children,

M.K., Mother,
Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark R. Fowler, District Associate Judge.

The mother appeals the juvenile court's termination of her parental rights to her children, R.F. and K.M. **AFFIRMED.**

Timothy Tupper of Tupper Law Firm, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Michael J. Walton, County Attorney, and Julie Walton, Assistant County Attorney, for appellee State.

Cynthia Taylor of Zamora, Taylor & Frederick, Davenport, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, J.**

The mother appeals the juvenile court's termination of her parental rights to her children, R.F. and K.M. Though she does not dispute the juvenile court's conclusion her rights should be terminated pursuant to Iowa Code section 232.116(1) (2015), she asserts termination is not in the children's best interests due to the parent-child bond. She also requests additional time to work towards reunification. We conclude that due to the mother's inability to resolve her substance abuse issues, more time would not correct the situation. Furthermore, the parent-child bond does not preclude termination, and termination is in the children's best interests. Consequently, we affirm the order of the juvenile court terminating the mother's parental rights.

K.M., born September 2010,[1] and R.F., born November 2013, came to the attention of the department of human services (DHS) in May 2014, due to the mother's paramour severely abusing her in the presence of the children. They were removed by ex parte order on June 11, 2014, and placed in family foster care, where they remained at the time of the termination hearing.

Following a drug test performed on May 18, 2014, the mother tested positive for opiates, heroin, and morphine. Additionally, R.F. tested positive for heroin, morphine, and codeine; K.M. tested positive for heroin, morphine, and marijuana. During the pendency of these proceedings, the mother tested positive for various substances—most notably heroin—and as recently as March 2015, she tested positive for PCP. The mother attended substance abuse

---

[1] Upon the birth of K.M., the mother received services from DHS because K.M. tested positive for THC. She successfully completed substance abuse treatment, and K.M. remained in her care.

treatment at the Center for Alcohol and Drug Services in July 2014, but was unsuccessfully discharged in August. Subsequent attempts at treatment were also unsuccessful, until she attended treatment programs while in jail. It was only then, as the juvenile court noted, the mother was engaged and motivated. She showed improvement in her substance abuse issues while incarcerated but relapsed at the end of March 2015, after a few weeks after getting out of jail.

The mother has a notable criminal history, which includes convictions for theft, possession of a controlled substance, and possession with intent to deliver. The mother was in and out of jail several times during the pendency of these proceedings. Her most recent incarceration was due to possession charges in Illinois, and she was bonded out of jail on April 5, 2015. As of the time of the termination hearing, the mother was not able to maintain stable housing and was unemployed.

During the pendency of these proceedings, the following services were provided to the mother: family safety, risk, and permanency services; Family Wellness Court; substance abuse treatment; domestic violence education; drug screening; and supervised visitation. With regard to visitation, the mother, when not incarcerated, consistently attended the supervised visits. However, she had trouble parenting both children and arriving at the visits on time. On some occasions, the FRSP worker observed the mother appeared to be under the influence of narcotics.

The State filed a petition to terminate the mother's parental rights on January 14, 2015. A contested hearing was held on April 8, 2015, and on May 14, 2015, the juvenile court issued an order terminating the mother's parental

rights. With respect to R.F., her rights were terminated pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*); regarding K.M., her rights were terminated under paragraphs (f), (h), and (*l*).[2] The mother appeals.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.*

As an initial matter, we do not agree with the mother's contention she should be granted more time to work towards reunification. As the juvenile court noted:

> While in jail, [the mother] appeared to make an earnest effort towards sobriety. Once she was released from jail, she again became involved with drugs and/or with people who were involved in drugs. She picked up additional felony criminal charges, and had a failed drug test. Unfortunately, the progress that the Court witnessed was too brief. The Court sincerely hopes that [the mother] finds it within herself to disassociate from those individuals who are involved in illegal activities and that she renews her battle against substance abuse. Unfortunately, the children cannot wait while the adjudicatory harms continue to exist.

The record supports this assessment. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). The mother has a long history of criminal activity and substance abuse, and she has failed to demonstrate she can solve these issues. Furthermore, in determining the future actions of the parent, her past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa

---

[2] The identity of the biological father with regard to both children has not been established, though a man known as M.T. could possibly be the father of K.M. The juvenile court terminated the biological fathers' parental rights in its order as well; no appeal followed.

2006). With these considerations in mind, we agree with the juvenile court the mother should not be granted an extension to work towards reunification.

Moreover, termination of the mother's parental rights is in the children's best interests. The record establishes that the mother and the children are bonded; nonetheless, this bond does not overcome the harm the children would suffer if returned to her care. The mother cannot provide a stable home or adequate parenting to the children, given her inability to resolve her drug addiction and the criminal activity connected with it. The children need a stable placement that is drug and violence free. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (noting the child's safety and need for a stable home are "the defining elements in a child's best interest"). It is also encouraging the children are thriving in their foster home, appear bonded to their foster parents, and the foster family has indicated they are interested in adoption. *See* Iowa Code § 232.116(2)(b). Consequently, termination of the mother's parental rights is in the children's best interests, and we affirm the order of the juvenile court. *See id.* § 232.116(2).

**AFFIRMED.**